# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA LABRASCA BECKER, ) | Case No. 3:16-cv-170 |
| ) | |
| Plaintiff, ) | JUDGE KIM R. GIBSON |
| ) | |
| v. ) | |
| ) | |
| VERIZON PENNSYLVANIA, INC., ) | |
| VERIZON PENNSYLVANIA, LLC, and ) | |
| DEBT RECOVERY SOLUTIONS, LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Lisa LaBrasca Becker brought this case against Verizon Pennsylvania, LLC and Debt Recovery Solutions, LLC,[1] alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. C.S. §§ 201-1 *et seq.*, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, and the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. C.S. §§ 2270.1 *et seq.*, as well as claims of negligence, invasion of privacy/false light, and intentional infliction of emotional distress ("IIED"). Pending before the Court is Defendants' partial motion to dismiss, in which they seek the dismissal of Becker's negligence and invasion of privacy/false light claims against both Defendants and the UTPCPL claim against Verizon. For the reasons that follow, Defendants' motion will be granted in part and denied in part.

---

[1] Becker also named Verizon Pennsylvania, Inc. as a defendant. Verizon, however, has pointed out that this was an improperly named entity—a point that Becker has not contested. Thus, Verizon Pennsylvania, Inc. will be terminated as a defendant. Becker also initially named CBE Group, Inc. as a defendant, but she has since stipulated to the dismissal of her claims against CBE Group. (ECF No. 17.)

## I. Background[2]

Sometime in 2012, Becker contacted Verizon after she received a Verizon bill that referenced an account number she did not recognize. A Verizon customer-service representative acknowledged that the account number on the bill did not belong to Becker and told her to disregard it. Nevertheless, Verizon continued to send Becker the same bill on a regular basis. Becker notified Verizon each time she received the erroneous bill, and each time Verizon told her that the bill had been sent in error and to disregard it. Despite those assurances, Verizon submitted the bill to a third-party debt collector, which began contacting Becker to try to collect the allegedly unpaid debt. Although Becker attempted to explain to the debt collectors that Verizon had told her that the bill was incorrect and that she should not be receiving any calls or letters to collect it, the dunning did not stop.

Verizon all the while assured Becker that this was an "internal error" that Verizon would correct and that the unpaid debt would not be reflected on Becker's credit report. In 2015, however, Becker learned that Verizon had not fixed the error and had in fact reported that Becker was delinquent on the bill to three credit bureaus. Because of this blotch on her credit report, Becker had to obtain a cosigner on a loan she was refinancing. She also had to renegotiate her car loan, and her other creditors reduced her available credit.

In January 2016, Becker disputed the inaccurate information with Verizon and the three credit bureaus. Two months later, she learned from the credit bureaus that the information had been removed from her credit report. But Verizon did not inform Becker that the negative information had been removed. Instead, Verizon advised Becker that it would have the

---

[2] These facts are taken from Becker's first amended complaint (ECF No. 18).

information removed and restore the account balance (for the account that did not belong to her) to zero if she waived all her rights against Verizon and Debt Recovery Solutions. According to Becker, "Defendants [sic] conduct in attempting to coerce Plaintiff into signing away her rights by holding over her head a negative report that Defendants knew was false constitutes bad faith, malicious and willful conduct, and violations of FCRA and the Unfair Trade Practices and Consumer Protection Law, as well as state statutes and common law." (ECF No. 18 ¶ 34.)

Becker filed this case on July 26, 2016. (ECF No. 1.) In response, Defendants moved to dismiss the complaint on various grounds. (ECF No. 13.) Becker thereafter amended her complaint (ECF No. 18), asserting the following claims: violation of the FCRA by Verizon (Count 1), violation of the UTPCPL by Verizon (Count 2), negligence by both Defendants (Count 3), invasion of privacy/false light by both Defendants (Count 4), violation of the FDCPA by Debt Recovery Solutions (Count 5), violation of the FCEUA and UTPCPL by Debt Recovery Solutions (Count 6), and IIED by both Defendants (Count 7, but erroneously labeled Count 8). Defendants have moved to dismiss the UTPCPL claim against Verizon and the claims of negligence and invasion of privacy/false light against both Defendants (Counts 2, 3, and 4, respectively). The motion has been fully briefed (*see* ECF Nos. 20, 29) and is ripe for disposition.

## II. Jurisdiction and Venue

The Court has jurisdiction over Becker's claims pursuant to 28 U.S.C. §§ 1331 and 1343. Venue is proper under 28 U.S.C. § 1391(b).

**III.    Standard of Review**

In determining the sufficiency of a complaint challenged under Rule 12(b)(6), a district court must conduct a two-part analysis. First, the court should separate the factual and legal elements of the claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Second, the court must determine whether the factual matters alleged are sufficient to establish that the plaintiff has a "plausible claim for relief." *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint, however, need not include "detailed factual allegations." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The court must also accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to the nonmoving party. *See id.* at 228 (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). But "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Rather, the complaint must present sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir .2010) (quoting *Iqbal*, 556 U.S. at 678).

Ultimately, whether a plaintiff has stated a "plausible claim for relief" is a context-specific inquiry that requires the district court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). The record to consider in making this determination includes the complaint and any "document integral or explicitly relied on in the complaint." *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (emphasis and

citation omitted). If a claim is vulnerable to dismissal under Rule 12(b)(6), the district court must permit a curative amendment regardless of whether a plaintiff seeks leave to amend unless amendment would be inequitable or futile. *Phillips*, 515 F.3d at 236 (citation omitted).

**IV.     Discussion**

Defendants argue that Becker's UTPCPL claim against Verizon and her claims of negligence and invasion of privacy/false light against both Defendants are preempted by the FCRA. In support of this argument, Defendants cite 15 USC § 1681h(e), which they contend preempts Becker's negligence and invasion of privacy claims, as well as *Van Veen v. AT & T Corp.*, 2011 WL 4001004, at *5 (E.D. Pa. May 25, 2011), in which the court interpreted a separate section of the FCRA, namely 15 U.S.C. § 1681t(b)(1)(F), to preempt a UTPCPL claim. Becker counters that her negligence and invasion of privacy claims are not preempted because she alleges that Defendants engaged in malicious, willful, and intentional conduct, thus removing these claims from the scope of § 1681h(e). Becker argues also that her UTPCPL claim against Verizon is not preempted because the FCRA does not preempt statutory claims "where defendants have acted with intentional and malicious conduct when reporting, or when they act in bad faith and with intentional conduct in attempting to escape responsibility for their conduct." (ECF No. 29 at 12.)

Some background discussion is helpful to place the parties' arguments in context. Congress enacted the FCRA to ensure that "consumer reporting agencies [("CRAs")] adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a matter which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information."

15 U.S.C. § 1681(b). Section 1681g requires that CRAs, upon request, provide consumers with the information in their credit file. Section 1681h contains the procedures CRAs must use when providing this information. And Section 1681h(e) provides the following:

> **(e) Limitation of Liability**
>
> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m[3] of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such customer.

"Congress intended this section's general bar on defamation, invasion of privacy, and negligence actions to be the quid pro quo for providing full disclosure under the FCRA." *Ross v. Fed. Deposit Ins. Corp.*, 625 F.3d 808, 814 (4th Cir. 2010) (citing *Thornton v. Equifax, Inc.*, 619 F.2d 700, 703 (8th Cir. 1980)). Thus, this section "'is not actually a preemption provision.'" *Webb v. Bob Smith Chevrolet, Inc.*, 2005 WL 2065237, at *5 (W.D. Ky. Aug. 24, 2005) (quoting *McAnly v. Middleton & Reutlinger, P.S.C.*, 77 F. Supp. 2d 810, 814 (W.D. Ky. 1999)). Rather, it affords a form of qualified immunity for defamation, invasion of privacy, and negligence claims based on information disclosed pursuant to the requirements of §§ 1681g, 1681h, or 1681m of the FRCA. *Thornton*, 619 F.2d at 703.

When the FCRA was originally enacted, it did not regulate the conduct of "furnishers"

---

[3] Section 1681m regulates the "[d]uties of users taking adverse actions on the basis on information contained in consumer reports."

of information to CRAs—that is, persons who "transmit[] information concerning a particular debt owed by a particular consumer to consumer reporting agencies," *Carney v. Experian Info. Solutions, Inc.*, 57 F. Supp. 2d 496, 501 (W.D. Tenn. 1999). But that changed in 1996 when Congress enacted 15 U.S.C. § 1681s–2. Section 1681s–2(a)(1)(A) provides that "[a] person shall not furnish any information relating to a consumer to any [CRA] if the person knows or has reasonable cause to believe that the information is inaccurate." Section 1681s–2(b)(1) in turn tells furnishers what they must do after being notified of a dispute about "the completeness or accuracy of any information provided by a person to a [CRA]."

Along with these new provisions, "Congress amended the FCRA to include an additional provision addressing preemption of state laws, which relates to the responsibilities of persons who furnish information to consumer reporting agencies." *Lalonde v. Bank of Am., N.A.*, 2016 WL 7734690, at *2 (W.D. Pa. Dec. 15, 2016). Under that section,

> [n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s–2 . . . relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply [to specific sections of the Massachusetts Annotated Laws and the California Civil Code.]

15 U.S.C. § 1681t(b)(1)(F).

Courts that have interpreted this provision have held that it preempts statutory and common-law claims that are based on the furnishing of information to CRAs. *See Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 48 (2d Cir. 2011); *Purcell v. Bank of Am.*, 659 F.3d 622, 625 (7th Cir. 2011); *Lalonde*, 2016 WL 7734690, at *2 (citing *Prukala v. TD Bank USA*, 2016 WL 6191912, at *3 (M.D. Pa. Oct. 24, 2016)); *Vullings v. Trans Union, LLC*, 115 F. Supp. 3d 538, 543

(E.D. Pa. 2015); *Burrell v. DFS Servs., LLC*, 753 F. Supp. 2d 438, 448-51 (D.N.J. 2010). Although some courts have held that only state statutory claims are preempted by this section, *see, e.g.*, *Manno v. Am. Gen. Fin. Co.*, 439 F. Supp. 2d 418, 424 (E.D. Pa. 2006), this view has been rejected by the only two courts of appeals that have addressed the question, *see Macpherson*, 665 F.3d at 48; *Purcell*, 659 F.3d at 624. As the Seventh Circuit has explained,

> [t]he . . . conclusion that the word "laws" in a federal statute refers to state statutes but not state common law produces a sense of déjà vu. This is how *Swift v. Tyson*, 41 U.S. 1, 16 Pet. 1, 10 L.Ed. 865 (1842), understood the word "laws" in the Rules of Decision Act, now codified at 28 U.S.C. § 1652. But *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), overruled *Swift* and held that a reference to state "laws" comprises all sources of legal rules, including judicial opinions. It is hard to see why the judiciary should again tread *Swift*'s path. Many modern decisions about preemption follow *Erie* and hold that a federal statute preempts state common law to the same extent as it preempts state statutory law. *PLIVA, Inc. v. Mensing*, —— U.S. ——, 131 S. Ct. 2567, 180 L.Ed.2d 580 (2011), is the most recent; it collects others.

*Purcell*, 659 F.3d at 624. And the Supreme Court has recognized in a slightly different context that "[t]he phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 521 (1992) (plurality opinion).

Because of the fairly narrow scope of § 1681h(e) and the broader scope of § 1681t(b)(1)(F), courts have struggled to understand the interplay between these two provisions. Various approaches to reconcile their perceived incompatibility have been adopted. *See, e.g.*, *Manno*, 439 F. Supp. 2d at 424-25. Nevertheless, this Court does not view these provisions as incompatible in this case, so there is no conflict to resolve. That is so because Becker's claims do not fall within the ambit of § 1681h(e). *See Knudson v. Wachovia Bank*, 513 F.

Supp. 2d 1255, 1259 (M.D. Ala. 2007) (explaining that "§ 1681h(e) should only be looked to to determine whether it conflicts with the plain language of § 1681t(b)(1)(F) if § 1681h(e) is otherwise applicable in the case").

Section 1681h(e) bars liability for certain claims "based on information disclosed pursuant to section 1681g, 1681h, or 1681m . . . or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report." And Sections 1681g and 1681h, as noted above, apply only to CRAs. But neither Verizon nor Debt Recovery Solutions is a CRA. Additionally, none of the information upon which Becker's claims are based was disclosed under § 1681g or § 1681h. Likewise, Section 1681m applies only to users of consumer reports, and neither Defendant is a "user of a consumer report" with respect to Becker. Thus, it is immaterial that Becker alleges willful and malicious conduct: § 1681h(e) simply does not apply here. It is not a bar to Becker's claims, so the Court need not consider whether her claims fall within its exception.

The Court must, however, consider whether Becker's claims are covered by § 1681t(b)(1)(F). Her claims would be covered by § 1681t(b)(1)(F) if—through those claims—she seeks to impose liability for subject matter regulated under § 1681s–2, which outlines the responsibilities of furnishers. Thus, a threshold question is whether Defendants are in fact furnishers under the FCRA.

"Although the term 'furnisher of information' is not defined within the FCRA, common sense dictates that the term would encompass an entity . . . which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies . . . ." *Carney*, 57 F. Supp. 2d at 501. Based on Becker's complaint, it is clear that Verizon is a

furnisher for purposes of the FCRA; one of Becker's principal allegations is that Verizon had "reported to the three credit bureaus that Plaintiff was delinquent in not paying the bogus bill." (ECF No. 18 ¶ 21.)

The next question is whether Becker's claims are based on subject matter regulated under § 1681s–2. In Count 3, Becker alleges that Defendants were negligent because they generally failed to investigate the inaccurate bill and because they failed to report the inaccurate status of the bill to the credit-reporting agencies. (ECF No. 18 ¶ 60(a)-(i).) Similarly, Becker alleges in Count 4 that Defendants' "invasion, publication and circulation of Plaintiff's name and the inaccurate information" caused her harm. (ECF No. 18 ¶ 65.) These allegations relate directly to subject matter regulated by § 1681s–2. Becker's negligence and invasion of privacy claims against Verizon are therefore preempted by § 1681t(b)(1)(F).

But whether Debt Recovery Solutions is a furnisher under the FCRA is less clear. (*Compare* ECF No. 18 ¶ 31 (referencing "the disputed, inaccurate information furnished by the Defendants" to the CRAs), *and* ¶ 44 (alleging that "Verizon and/or Debt Recovery Solutions" made the negative report to the CRAs), *with* ¶ 48(a) (alleging that only Verizon violated the FCRA by "[r]ecklessly reporting negative information about the Plaintiff").) At this stage, the Court is required to draw all inferences from the facts alleged in the light most favorable to Becker. *See Phillips*, 515 F.3d at 228. On this point, the inference most favorable to Becker is that Debt Recovery Solutions did *not* furnish information to the CRAs. That is so because making this inference would exempt Becker's claims against Debt Recovery Solutions from § 1681t(b)(1)(F)'s bar.

Yet Becker's lack of clarity on this point illustrates another problem with her negligence

-10-

and invasion of privacy claims against Debt Recovery Solutions: the scarcity of factual allegations specific to Debt Recovery Solutions. To state a claim, a complaint must contain sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sheridan*, 609 F.3d at 262 n.27 (quoting *Iqbal*, 556 U.S. at 678). Although Becker in her complaint makes general conclusory allegations, she is mum on what conduct—specifically—her negligence and invasion of privacy claims against Debt Recovery Solutions are based. The Court does not discern sufficient factual content for these claims, especially if it assumes that Debt Recovery Solutions is not a furnisher for purposes of the FCRA; that assumption would seemingly eliminate the element of causation for both claims.

To summarize: if Debt Recovery Solutions is a furnisher under the FCRA, Becker's negligence and invasion of privacy claims against Debt Recovery Solutions would be barred by § 1681t(b)(1)(F). And if the Court assumes that Debt Recovery Solutions is not a furnisher, then the claims fail for insufficient factual allegations. Either way, dismissal of these claims is appropriate. The Court will, however, grant Becker leave to amend her complaint against Debt Recovery Solutions with respect to these claims. If Becker believes she can state valid negligence and invasion of privacy claims against Debt Recovery Solutions—without alleging facts that would make Debt Recovery Solutions a furnisher under the FCRA—then she is free to do so.

This leaves the UTPCPL claim against Verizon in Count 2. Becker alleges that the following conduct violated the UTPCPL:

> b. Defendant failed to comply with the FDCPA and FCEUA

   which are <u>per se</u> violations of the UTPCPL;
 c. Defendant's misrepresentation to the Plaintiff that the bill assigned to her was erroneous and would be removed was relied upon by the Plaintiff;
 d. Plaintiff's reliance upon the misrepresentation of Verizon in setting forth that the bill constituted an internal error that would not negatively affect her caused her great emotional harm and financial detriment when Plaintiff discovered that Defendants had reported negative information concerning the erroneous billing to the credit reporting agencies, thus negatively affecting her credit; and
 e. Defendants attempts to bully and coerce the Plaintiff into waiving her rights in exchange for returning the bogus account to zero constitutes deceptive and fraudulent conduct, separate and apart from the negative credit reporting, and is in violation of the UTPCPL.

(ECF No. 18 ¶ 56(b)-(e).) But unlike the allegations in support of Counts 3 and 4, these allegations relate to Verizon's debt-collection activities—and not to its conduct in furnishing information to a CRA. Thus, this claim is not preempted by § 1681t(b)(1)(F). *See Ross*, 625 F.3d at 810 (holding that the plaintiff's "unfair debt collection practices claim survives preemption" under § 1681t(b)(1)(F), except to "the extent her claims rely on [the defendant's] reporting of false credit information").

**V. Conclusion**

  For the foregoing reasons, Defendants' partial motion to dismiss will be granted in part and denied in part. Specifically, the motion will be granted with respect to Counts 3 and 4, and denied with respect to Count 2. A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| LISA LABRASCA BECKER, | ) | Case No. 3:16-cv-170 |
|---|---|---|
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| VERIZON PENNSYLVANIA, INC., VERIZON PENNSYLVANIA, LLC, and DEBT RECOVERY SOLUTIONS, LLC, | ) | |
| Defendants. | ) | |

## ORDER

NOW, this 2nd day of June 2017, upon consideration of Defendants' partial motion to dismiss (ECF No. 20) and for the reasons set forth in the memorandum opinion accompanying this order, it is **HEREBY ORDERED** as follows:

1. Defendant's motion (ECF No. 20) is **GRANTED IN PART and DENIED IN PART**. Specifically, the motion is **GRANTED** with respect to Counts 3 and 4, which are hereby **DISMISSED**. But Defendants' motion is **DENIED** with respect to Count 2.

2. Lisa Becker is granted leave to amend her complaint with respect to her negligence and invasion of privacy claims against Debt Recovery Solutions. If she chooses to do so, she shall file a second amended complaint **on or before June 16, 2017**.

3. Verizon Pennsylvania, Inc. is hereby terminated as a Defendant.

4. A telephonic status conference is scheduled for **June 21, 2017, at 1:30 p.m.**, to determine whether it will be necessary to adjust the discovery deadlines contained in the Court's initial scheduling order dated January 6, 2017 (ECF No. 24).

BY THE COURT:

_/s/ Kim R. Gibson_
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE